**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LORENZO M. JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  19-3175-DDC-GEB** |
| | ) | |
| **ANDREW PARKS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Lorenzo M. Jones, a state prisoner appearing *pro se* and *in forma pauperis*, filed this civil rights complaint under 42 U.S.C. § 1983.  This matter is before the Court on Defendants' Motion to Stay Proceedings, Including Status Conference (**ECF No. 27**), wherein Defendants ask the Court to stay this case pending screening of Plaintiff's Complaint.   Plaintiff also seeks the ability to issue a subpoena in his Motion for Issuance of Subpoena (**ECF No. 21**).

On November 19, 2019, the Court entered a Memorandum and Order (ECF No. 5) finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of the Lansing Correctional Facility in Lansing, Kansas ("LCF").[1]  Accordingly, the Court ordered the appropriate officials of LCF to prepare and file a *Martinez* Report, noting once the report was received, the Court could properly screen Plaintiff's claims under 28 U.S.C. § 1915.  At the direction of the

_____

[1] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).

Court, counsel for the Kansas Department of Corrections ("KDOC") filed the *Martinez* Report (ECF No. 18), and Defendants filed an Answer (ECF No. 24).

On September 15, 2020, the Court entered an Order and Notice of Hearing (ECF No. 26), setting this matter for a status conference on October 8, 2020.  Defendants then filed their motion to stay this case, including the status conference, to allow the Court to screen Plaintiff's Complaint after submission of the *Martinez* Report. For the reasons set forth below, the Court **GRANTS** the motion to stay this case (**ECF No. 27**) and will now screen Plaintiff's Complaint.

## I.  Nature of the Matter Before the Court

The facts alleged in Plaintiff's Complaint and the Court's screening standards are set forth in detail in the Court's Memorandum and Order at ECF No. 5.  Although Plaintiff is currently incarcerated at the El Dorado Correctional Facility ("EDCF"), the claims giving rise to his Complaint occurred during his incarceration at LCF.  Plaintiff's claims can be summarized as follows:  Plaintiff claims defendant Andrew Parks, the Unit Team Head at LCF, violated Plaintiff's right to be free from cruel and unusual punishment in violation of the Eighth Amendment when he denied the doctor's order to bring Plaintiff in for surgery on August 18, 2018.  Plaintiff also claims defendant Gina Howlett, a Unit Team Manager at LCF, refused to comply with his stair restriction which constituted "depraved indifference gross medical negligence."[2]

---

[2] The Court dismissed Corizon as a defendant.  (ECF No. 11.)

## II. Discussion

### 1. Medical Claim Regarding Surgery

Plaintiff alleges Defendant Parks violated the Eighth Amendment when he denied Plaintiff's doctor-ordered hernia surgery. The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[3]

The "deliberate indifference" standard includes both an objective and a subjective component.[4] In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury."[5] A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[6] Plaintiff has alleged a serious medical need.

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."[7] In measuring a prison official's state of mind,

---

[3] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[4] *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).
[5] *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).
[6] *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).
[7] *Id*. (quoting *Sealock*, 218 F.3d at 1209).

"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[8]

According to Plaintiff, Defendant Parks "denied the doctor's order to bring [him] in on 8-18-18 to Providence to have major surgery causing major organs to get entangled in [his] hernia causing great pain." (ECF No. 1, at 4.) Plaintiff also claims Defendant Parks "is the Head Unit Team of the clinic and makes the final decisions." *Id.* at 1.

The *Martinez* Report[9] indicates Plaintiff was not scheduled for surgery on August 18, 2018. The *Martinez* Report provides in part as follows:

> On July 12, 2017, Plaintiff was seen in a nurse visit with the complaint that he had a "bulge of the right side of his groin and hard to go the bathroom." Plaintiff reported onset was June 12, 2017. See Exhibit B (Medical Records of Lorenzo Jones) at pp. 1–4.
>
> Plaintiff was seen for a follow up visit on August 9, 2017 and was diagnosed with a right inguinal hernia. He was counselled extensively on lifestyle and activity modification and informed to return to the clinic if there was any worsening or no improvement. An abdominal truss was also requested, approved and ordered. Restrictions with regard to living unit assignments were entered limiting placement to one flight of stairs and bottom bunk only. Ex. B at pp. 5–12.
>
> Plaintiff returned to the clinic on September 21, 2018 for follow up with regard to the hernia. It was noted that Plaintiff was not wearing the truss that he had been given on August 16, 2017.[10] Plaintiff was instructed to hold the inguinal area whenever he felt a cough or sneeze occurring and understood that he was to come to the clinic for acute reevaluation if he developed acute, severe pain. Ex. B at pp. 13–15. An outpatient request was

---

[8] *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

[9] The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).

[10] The records show that the truss was approved on August 16, 2017. The Utilization Management Progress Note dated August 23, 2017, shows that the truss was "placed on order from McKesson pending arrival." (ECF No. 18–2, at 11–12.)

placed for a surgical evaluation and follow up for hernia repair. Ex. B at p. 16. On September 25, 2018, an appointment was made with Dr. Lee Ludwig for a general surgery consultation on October 11, 2018 at his Leavenworth office. Ex. B at p. 17.

On October 16, 2018, a utilization management request for outpatient surgery was submitted as Dr. Ludwig had recommended repair of the hernia. This request was approved on October 25, 2018. Ex. B at pp. 21–22.

On May 15, 2019, Plaintiff returned to the clinic for a chronic care visit and was seen for follow up for hernia belt and hernia surgery as well as a stair restriction and medical shoes. Plaintiff was informed that the surgery had been approved since October of 2018. The nurse reported that the surgery was in the appointment process and Plaintiff was instructed to look for out call list in the next two to four weeks. An appliance request for a hernia belt was submitted and Plaintiff was instructed to avoid limiting [sic] or straining over 20 pounds weight as well as strenuous activities. Plaintiff was also informed that a stair restriction was in place and did not need to be renewed for the next six months. The restriction limited living unit assignments to one flight of stairs and bottom bunk only. Ex. B at pp. 23–30.

On May 30, 2019, Plaintiff attended a nurse visit complaining that he had not had a bowel movement in weeks. Plaintiff indicated that he had a history of constipation. Plaintiff's abdomen was soft but not tender or distended and the bowel sounds were normoactive in all four quadrants. Plaintiff reported no pain and the physical assessment was reported as unremarkable. A bottle of mag citrate was provided to Plaintiff who was informed to contact medical if symptoms developed or worsened. Ex. B at pp. 31–34.

There is no record of any further medical treatment provided at LCF with regard to the hernia or related symptoms prior to Plaintiff's transfer on June 12, 2019.

(ECF No. 18–7, at 2–4.)

In his Affidavit, Defendant Parks maintains he was not informed that Plaintiff was scheduled to have surgery in August of 2018, and he did not deny any order or request to transport Plaintiff to surgery on August 18, 2018. (ECF No. 18–4.) Aleycia McCullough, Corizon Health's Health Services Administrator at LCF, states in her affidavit that she reviewed Plaintiff's chart and found he was never scheduled for hernia

surgery in 2018 or 2019 while housed at LCF.  (ECF No. 18–3.)

In his August 11, 2020 response, Plaintiff alleges on October 16, 2018, Dr. Lee Ludwig recommended hospitalization for surgical repair of Plaintiff's hernia, and the KDOC approved the hospital transfer on October 25, 2018.  (ECF No. 20 at 2).  Plaintiff further alleges he has not received the surgery to date.  (*Id*.)  Plaintiff refers to Exhibit B to the *Martinez* Report as support.

The *Martinez* Report shows on October 16, 2018, a utilization management request for outpatient surgery was submitted as Dr. Ludwig recommended repair of the hernia; the request was approved on October 25, 2018.  On May 15, 2019, Plaintiff was informed that the surgery had been approved since October of 2018, it "was in the appointment process," and Plaintiff was instructed to look for an out call list in the next two to four weeks.  Plaintiff did not receive hernia surgery prior to his transfer to EDCF on June 12, 2019, and as noted above, did not receive the surgery prior to the date of his filed response on August 11, 2020.

The *Martinez* Report focuses on Plaintiff's allegation that his hernia surgery was "scheduled" on "August 18, 2018."  However, Plaintiff referenced the wrong date and was confused about the status of his surgery and whether it was scheduled or approved. Nevertheless, the Court is not convinced at this stage that Plaintiff cannot amend this claim to allege a plausible claim for relief.  Therefore, the Court will grant Plaintiff an opportunity to amend if his claim survives dismissal based on failure to exhaust.

### 2.  Claim Regarding Stair Restriction

Plaintiff alleges Defendant Howlett is the Unit Team Manager of C-1 Seg, and she

instructed officers to place Plaintiff on the second tier despite his stair restriction. Plaintiff claims Defendant Howlett refused to comply with Plaintiff's stair restriction, but the *Martinez* Report shows his assignments were in compliance with the restriction to one flight of stairs.

The *Martinez* Report indicates Defendant Howlett placed Plaintiff in cells located on the second floor of the cellhouse.  Because these cells were only one flight of stairs from the main floor of the cellhouse, the assignments complied with Plaintiff's medical restrictions.[11]

Plaintiff responds by stating common sense should dictate that anyone who cannot climb a short step-ladder to a top bunk should not be climbing one flight of stairs.  (ECF No. 20, at 2.)  However, Plaintiff has not refuted the fact that Defendant Howlett was following the stair restriction in place for Plaintiff while he was housed at LCF. Plaintiff's claim that Defendant Howlett failed to follow his stair restrictions when placing him in his cell assignments is subject to dismissal for failure to state a claim. Therefore, Plaintiff is directed to show good cause why this claim should not be dismissed.

### 3.  Exhaustion

In his Complaint, Plaintiff alleges he filed a personal injury claim with KDOC. (ECF No. 1, at 7.)  The *Martinez* Report states there is no record of Plaintiff fully

---

[11] *See* ECF No. 18–5 (Affidavit of Gina Howlett); *see also* ECF No. 18–3 (Affidavit of Aleycia McCullough, LCF Health Services Administrator, declaring that Plaintiff's medical classification was changed on August 9, 2017, to limit his living unit assignments to bottom bunk only and one flight of stairs, and that the assignment remained in place while Plaintiff was at LCF).

addressing his claims through the inmate grievance or property claim procedures.  "There is no record of Plaintiff filing an appeal of any grievance between January 1, 2017 and December 31, 2019 nor any record of a property claim filed by Plaintiff alleging a personal injury between January 1, 2017 to December 31, 2019."  (ECF No. 18–7, at 5) (citing Exhibit F, Affidavit of Doug Burris).   In their Answer, Defendants assert the affirmative defense of failure to exhaust, stating Plaintiff's "claims are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), because he failed to exhaust his available administrative remedies."  (ECF No. 24, at 3.)

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[12]

"Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."[13] This exhaustion requirement "is mandatory, and the district court [is] not authorized to

---

[12] 42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).

[13] *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

dispense with it."[14] A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein.[15] "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies."[16] "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[17]

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies.[18] The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit.[19]

As this Court has previously found, there are two distinct avenues of administrative exhaustion established under Kansas law. The first is found in the regulations at Article 15, Chapter 44 of the Kansas Administrative Regulations.[20] This set of regulations directs inmate grievances, including:

---

[14] *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249.

[15] *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

[16] *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

[17] *Jones*, 549 U.S. at 218.

[18] *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

[19] *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

[20] *Lewis v. Carrell*, No. 12-CV-3112-DC-JPO, 2015 WL 413640, at *2–3 (D. Kan. Jan. 30, 2015).

'a broad range of matters that directly affect the inmate, including' complaints about policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility. Kan. Admin. Regs. § 44–15–101a(d)(1)(A)–(B). As the Court previously determined, this regulation applies to a constitutional claim such as the one asserted here, where the conduct complained of stems from "actions by employees" of the prison facility. *Id*. § 44–15–101a(d)(1)(B).[21]

"The second avenue is governed by the regulations in Article 16 of Chapter 44 of the Kansas Administrative Regulations."[22] Kan. Admin. Regs. § 44–16–104a applies to claims for personal injury and provides: "(a) Each inmate claim for personal injury shall be submitted to the [prison] facility and [the] secretary of corrections within 10 calendar days of the claimed personal injury."[23]

The Kansas Court of Appeals has explained the two sets of regulations found in Articles 15 and 16 are "separate and distinct" from one another.[24] Indeed, the regulation "expressly provides: 'The grievance procedure [in article 15] shall not be used in any way as a substitute for, or as part of, the . . . property loss or personal injury claims procedure [in Article 16] . . .'"[25]

The District of Kansas in the case of *Conley* addressed defendants' argument that plaintiff failed to file a personal injury claim in a § 1983 case, and noted while case law establishes exhaustion of Article 15's procedures alone is not sufficient for a plaintiff to

---

[21] *Id.*

[22] *Id*. at *3.

[23] *Id*. (citing Kan. Admin. Regs. § 44–16–104a).

[24] *Id*. (citing *Redford v. Kan. ex rel. Dep't of Corr.*, 295 P.3d 1054, 2013 WL 781102, at *6 (Kan. Ct. App. Mar. 1, 2013 (unpublished table decision)).

[25] *Id*. (quoting Kan. Admin. Regs. § 44–15–101a(d)(2); *see also Sharrock v. Stephens*, No. 10–CV–3210–CM/SAC, 2011 WL 5526444, at *1 (D. Kan. Nov. 14, 2011) ("Importantly, the requirements in [§ 44–16–104a] apply regardless of whether the inmate pursues a grievance pursuant to § 44–15–101.").

assert a personal injury claim, the Court "had not located any authority requiring an inmate to exhaust both the requirements of Article 15 and Article 16 before asserting a § 1983 claim based on an alleged violation of an inmate's constitutional rights" and declined to invent such a requirement.[26] However, the Court did find exhaustion under § 44–15–101 was necessary for plaintiff's § 1983 claim.[27]   The Court found where plaintiff asserted a § 1983 claim for failure to provide proper dental care, plaintiff's claim constituted a complaint about the conditions of his imprisonment and the actions of employees, which requires exhaustion under Kan. Admin. Regs. § 44–15–101.[28] Likewise, the Court in *Nunez* stated "an inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act."[29]   The Court held "Article 15 of the KDOC regulations covers the administrative procedures that must proceed a § 1983 claim."[30]

In response to this concern, Plaintiff filed his motion seeking to subpoena Lindsey Wildermuth—whom Plaintiff references as a former KDOC employee—regarding Plaintiff's submission of a personal injury claim.   (Pl.'s Motion, ECF No. 21–1.) Plaintiff claims Wildermuth is a witness to Plaintiff's "attempt of administrative remedy exhaustion, specifically—the Personal Injury Claim witness submitted on behalf of

---

[26] *Conley v. Pryor*, No. 11–3200–DDC–KGS, 2015 WL 413638, at *14 (D. Kan. Jan. 30, 2015).
[27] *Id*.
[28] *Id*.
[29] *Nunez v. Heimgartner*, Case No. 15–3259–EFM–DJW, 2017 WL 2264466, at *5 (D. Kan. May 24, 2017) (citation omitted).
[30] *Id*. at *6 (citation omitted).

Plaintiff's Claim." *Id*.  Plaintiff states the Personal Injury Claim was "suspiciously removed" from KDOC's records after the submission of his Complaint.  *Id*.  But the KDOC's Internal Management Policy and Procedure Section 01-118D provides all personal injury claims "shall be made under oath and notarized."[31] Therefore, the Court will **GRANT** Plaintiff's Motion for Issuance of Subpoena (**ECF No. 21–1**) to the extent the Court will direct the KDOC to supplement the *Martinez* Report with an affidavit from Lindsey Wildermuth.

Although Plaintiff alleges he filed a personal injury claim, he does not claim he followed the grievance procedures in Kan. Admin. Regs. § 44–15–101.  For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis.[32]  If the informal resolution is unsuccessful, the inmate must progress through a three-level process which includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections.[33] The procedure to follow at each level is described in detail in Kan. Admin. Regs. § 44–15–102.

Given the above, the Court will permit the parties an opportunity to address whether Plaintiff has fully exhausted his administrative remedies prior to bringing this action under § 1983.

---

[31] The KDOC's Internal Management Policy and Procedure Section 01-118D also states that "[e]very offender shall report any personal injury or medical problem immediately, according to procedures established by written order of the warden/superintendent." *See* https://www.doc.ks.gov/kdoc-policies/AdultIMPP/Chapter1 (last visited Sept. 24, 2020).

[32] K.A.R. § 44–15–101(b).

[33] K.A.R. § 44–15–101(d).

### 4.  Additional Claims in Plaintiff's Response

In his Response to the *Martinez* report, Plaintiff also asks the Court to strike Exhibit A to the *Martinez* Report, consisting of his KASPER Profile.  Plaintiff suggests this information is irrelevant and slanderous because it includes information regarding his conviction and prison disciplinary reports. However, the exhibit shows when and where Plaintiff was incarcerated within the KDOC facilities, and therefore is relevant for that purpose.

Plaintiff also asks for a copy of his Complaint.  The Court will direct the Clerk to provide Plaintiff with such a copy.  Plaintiff suggests he will seek to amend his Complaint to add KDOC counsel as a defendant, arguing she provided fraudulent information by submitting the affidavit of "Andy Parks."  Plaintiff claims Defendant's name is "Andrew Parks" and therefore "Andy Parks" is not a party or witness to this case.  Plaintiff also seeks to strike the affidavit.  Plaintiff's request to strike the affidavit or to add counsel as a defendant is denied.  There is nothing to suggest Andy Parks is not the same party Plaintiff named in his Complaint.  Parks attests in his Affidavit that he has been employed at LCF for sixteen years, and that he was the Unit Team Manager assigned to the clinic at LCF during the relevant timeframe.  (ECF No. 18–4.)

## III.   Conclusions

As discussed above:

**IT IS THEREFORE ORDERED** that Defendants' Motion to Stay Proceedings, Including Status Conference (**ECF No. 27**) is **GRANTED** to the extent that the Court will continue the status conference formerly scheduled for October 8, 2020 until further

order of the Court.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Subpoena (**ECF No. 21–1**) is **GRANTED** to the extent that the Court will direct the KDOC to supplement the *Martinez* Report with an affidavit from Lindsey Wildermuth.

**IT IS FURTHER ORDERED** that Plaintiff shall have until **October 26, 2020**, in which to show good cause why his claims against Defendant Howlett should not be dismissed for failure to state a claim.  Failure to show good cause by this deadline may result in dismissal of this claim without further notice.

**IT IS FURTHER ORDERED** that Plaintiff and Defendants must submit any briefs or motions dealing with Plaintiff's exhaustion of administrative remedies by not later than **October 26, 2020**.

**IT IS FURTHER ORDERED** that the KDOC is directed to supplement the *Martinez* Report with an affidavit from Lindsey Wildermuth by **October 14, 2020.**

**IT IS FURTHER ORDERED** that the Clerk is directed to send Plaintiff a copy of his Complaint (ECF No. 1).

**IT IS SO ORDERED.**

Dated September 30, 2020, at Wichita, Kansas.


s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge